IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:09CR17 |
| Plaintiff, ) | |
| ) | |
| vs. ) | REPORT AND |
| ) | |
| ADELIO RIBERA-MIRANDA, ) | RECOMMENDATION |
| ) | |
| Defendant. ) | |

This matter is before the court on the motion to suppress (Filing No. 30) filed by defendant Adelio Ribera-Miranda (Ribera-Miranda). Ribera-Miranda is charged in the Indictment with knowingly executing and attempting to execute a scheme and artifice to defraud the Bank of the West by submitting applications for a mortgage with the use of a social security number of another person as his own to secure the approval of a loan on November 2, 2006 (Count I), and March 19, 2007 (Count III), in violation of Title 18 U.S.C. § 1344. As part of the scheme Ribera-Miranda fraudulently obtained mortgage loans in the amount of $28,500.00 on November 2, 2006 (Count I), and $50,000.00 on March 19, 2007 (Count III). Ribera-Miranda is also charged in the Indictment with knowingly, and without lawful authority, using a social security number of another person during and in relation to a felony violation enumerated in Title 18 U.S.C. § 1028A(c), on November 2, 2006 (Count II), and on March 19, 2007 (Count IV). Ribera-Miranda seeks to suppress evidence of any and all statements made by him at his grocery store in Omaha, Nebraska, to law enforcement officers on January 7, 2009, along with any evidence derived therefrom.

An evidentiary hearing was held on Ribera-Miranda's motion on April 8, 2009. Ribera-Miranda was present for the hearing along with his counsel, Donald L. Schense. The United States was represented by Assistant U.S. Attorney Frederick D. Franklin. Laura Garcia-Hein, a certified interpreter in the Spanish language, served as interpreter during the evidentiary hearing. The court heard the testimony of Special Agent Brian Dostal (Agent Dostal) of the Inspector General's Office of the Social Security Administration (SSA). The court received into evidence the following exhibits: an Advice

of Rights, Form OI-13 in Spanish (Exhibit 1); an Advice of Rights, Form OI-13 in English (Exhibit 1A); a two-page promissory note from Bank of the West executed on November 2, 2006 (Exhibit 2); a two-page settlement statement from Bank of the West (Exhibit 3); a two-page home equity application from Bank of the West (Exhibit 4); and a two-page promissory note from Bank of the West executed on March 19, 2007 (Exhibit 5).  A transcript of the hearing (TR.) was filed on April 17, 2009 (Filing No. 37), whereupon the matter was deemed submitted.

## FINDINGS OF FACT

Agent Dostal has been with the Inspector General's Office of the SSA since 1997 (TR. 3).  An investigator from Bank of the West submitted a Suspicious Activity Report (SAR) to Agent Dostal (TR. 3).  The SAR suggested Ribera-Miranda opened two accounts and executed two loans using a social security number not assigned to him (TR. 3-4).  Based on the SAR, Agent Dostal began an investigation, ran criminal checks, and determined Ribera-Miranda was an alien illegally in the United States (TR. 4, 22).  Agent Dostal decided to interview Ribera-Miranda (TR. 4).  Immigration and Customs Enforcement  Special Agent Clyde Buckley (Agent Buckley) and Agent Dostal located Ribera-Miranda at the grocery store Ribera-Miranda owned and operated with his wife (TR. 4-5).  Agents Dostal and Buckley went to the store with the intention of placing Ribera-Miranda in Immigration custody due to his illegal status as well as interviewing Ribera-Miranda about the bank loans (TR. 22).

Agents Dostal and Buckley interviewed Ribera-Miranda on January 7, 2009, in the morning, at Ribera-Miranda's small family grocery store at the corner of 21st and "Q" Streets in South Omaha (TR. 4).  Agents Dostal and Buckley arrived in an unmarked car, wearing civilian clothes with concealed handguns (TR. 28).  Agent Dostal, after showing his badge and credentials, asked the man behind the counter if he was Adelio Ribera and whether there was a place Agent Dostal, Agent Buckley, and Ribera-Miranda could visit (TR. 4).  Ribera-Miranda answered "yes" and escorted Agents Dostal and Buckley to a room in the back of the store (TR. 4-5).  Agent Dostal's questions and Ribera-Miranda's answers were both in English (TR. 6).  The brief conversation before the interview in the

back room was to determine Ribera-Miranda's identity and to explain the reasons for the Agents' visit (TR. 5).

Agent Dostal told Ribera-Miranda that Agent Dostal had questions concerning two of Ribera-Miranda's loans (TR. 5). Agent Dostal did not read, translate, or discuss the *Miranda* form with Ribera-Miranda because Agent Dostal's Spanish is extremely limited and he does not have any training in Spanish (TR. 22). Form OI-13 is the general form used to administer *Miranda* rights (TR. 10). On this occasion, Agents Dostal and Buckley decided to administer the *Miranda* warnings using the Spanish Form OI-13 due to Ribera-Miranda's nationality and the agents' belief Ribera-Miranda was conversant in Spanish (TR. 10, 24-25). Agent Dostal stated, "Before we can talk to you, I have to advise you of your *Miranda* rights" (TR. 7). At this point Agent Buckley presented the Spanish *Miranda* form to Ribera-Miranda (TR. 7). Agent Buckley then read from the Spanish *Miranda* form to administer the *Miranda* warnings to Ribera-Miranda. (TR. 7-8). Ribera-Miranda went through the *Miranda* form line-by-line with Agent Dostal and wrote his initials next to each statement on the *Miranda* form (TR. 26; Ex. 1). Ribera-Miranda also corrected Agent Buckley's pronunciation on certain Spanish terms during the advisement (TR. 26). At the conclusion of Agent Buckley's advisement, Ribera-Miranda, Agent Dostal, and Agent Buckley signed the *Miranda* form (TR. 8; Ex. 1). After Ribera-Miranda signed the *Miranda* form, Agent Dostal continued the interview in English (TR. 11).

During the course of the interview, Ribera-Miranda attended to store customers (TR. 27-28). Ribera-Miranda was not informed he would be taken into custody until the end of the interview; however, Agent Dostal testified he would not have allowed Ribera-Miranda to leave freely (TR. 22, 29-30). Agent Dostal and Ribera-Miranda were able to converse in English and Agent Dostal could understand Ribera-Miranda's English (TR. 29). Agent Dostal presented Ribera-Miranda with the bank documents (Ex. 2-5) and asked Ribera-Miranda whether he prepared these documents at Bank of the West (TR. 11-12). Ribera-Miranda confirmed he supplied the information (TR. 12). Agent Dostal also asked whether the signature was Ribera-Miranda's (TR. 11-12). Ribera-Miranda confirmed, in English, "Yes, this is my signature" (TR. 12). Further, Agent Dostal asked Ribera-Miranda to write his initials next to each signature on the bank documents (TR. 13-16). Ribera-Miranda

then wrote his initials, "A.R.," next to his signature on each of the bank documents to affirm he signed his name on the documents (Ex. 2-5) (TR. 13-16). After Agent Dostal finished his interview, Agent Buckley conducted a short interview concerning Ribera-Miranda's immigration status and previous deportations (TR. 28). Agent Buckley informed Ribera-Miranda that because Ribera-Miranda was an illegal alien he would have to accompany the agents downtown (TR. 28). The interview lasted approximately one-half hour (TR. 28).

## LEGAL ANALYSIS

The defendant argues the statements made during the interrogation with Agents Dostal and Buckley were obtained in violation of his rights under the Fifth and Sixth Amendments of the United States Constitution and should be suppressed. **See** Filing No. 30 - Motion ¶ 3. Ribera-Miranda asserts the statements were made as a result of a custodial interrogation. **See** *id.* ¶ 4. In this case there is no doubt Agents Dostal and Buckley interrogated Ribera-Miranda. Agent Dostal asked specific questions concerning the bank documents and asked Ribera-Miranda to write his initials next to his signature on the bank documents to affirm Ribera-Miranda executed the documents.

Under the Fifth Amendment, the Self-Incrimination Clause provides, "No person . . . shall be compelled in any criminal case to be a witness against himself." "[T]he core protection afforded by the Self-Incrimination Clause is a prohibition on compelling a criminal defendant to testify against himself at trial." *United States v. Patane*, 542 U.S. 630, 637 (2004). The touchstone for the admissibility of a defendant's statements is voluntariness. *Brown v. Mississippi*, 297 U.S. 278 (1936). The court must look to the totality of circumstances in determining whether or not the statements were voluntary. *Colorado v. Connelly*, 479 U.S. 157 (1986); *Mincey v. Arizona*, 437 U.S. 385 (1978); *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). Further, "[t]he requirements of *Miranda* arise only when a defendant is both in custody and being interrogated." *United States v. Londondio*, 420 F.3d 777, 783 (8th Cir. 2005) (**citing** *Miranda v. Arizona*, 384 U.S. 436, 467 (1966)). "Interrogation in the *Miranda* context refers to express questioning and to words or conduct that officers should know is 'reasonably likely to elicit an

incriminating response from the suspect.'" *United States v. Briones*, 390 F.3d 610, 612 (8th Cir. 2004) (**quoting** *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)).

"*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.' It was that sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited." *United States v. LeBrun*, 363 F.3d 715, 720 (8th Cir. 2004) (**quoting** *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)). The "ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam) (internal quotation and citation omitted); **see also** *United States v. Elzahabi*, 557 F.3d 879, 883 (8th Cir. 2009). The court must evaluate the objective circumstances surrounding the interrogation, and whether, under those circumstances, "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995); **see** *Stansbury v. California*, 511 U.S. 318, 322-23 (1994) ("[T]he initial determination depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned."). "A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).

The Eighth Circuit has identified several factors, which act to mitigate or aggravate the custodial atmosphere, used to determine whether an interview is custodial. *United States v. Ollie*, 442 F.3d 1135, 1138 (8th Cir. 2006). Some specific factors to evaluate are:

> 1. whether the police told the suspect he was free to leave, was free to refuse to answer questions, or was not under arrest;
> 2. whether the person's movements were unrestrained during the interview;
> 3. whether the person either initiated contact with authorities or voluntarily acquiesced to official requests;

5

    4. whether the police used coercive or deceptive tactics that restricted the suspect's freedom to terminate the encounter; and
    5. whether the questioning occurred in a police-dominated atmosphere.

*Ollie,* 442 F.3d at 1137.

  The question is whether, at the time of the interview, Ribera-Miranda was in custody or a person in Ribera-Miranda's position would believe he was in custody. The court finds there was not a custodial interrogation. While Ribera-Miranda would not have been allowed to leave the store, he was not aware of this restriction during the interrogation. Additionally, the agents did not hinder Ribera-Miranda from attending to customers in his store. Although the Agents subjectively intended to take Ribera-Miranda into custody, such intent is irrelevant. Moreover, Agent Buckley advised Ribera-Miranda of his *Miranda* rights which provided Ribera-Miranda with the opportunity to refuse to answer questions and to invoke his right to counsel. The agents did not place Ribera-Miranda under arrest during the interrogation, the agents did not handcuff Ribera-Miranda, and the agents did not display their handguns to Ribera-Miranda. Ribera-Miranda did not initiate the conversation with the Agents but he did voluntarily acquiesce to speak with the Agents, answer the Agents questions, and write his initials next to his signatures on the bank documents. Moreover, the record does not indicate that Agent Dostal or Buckley coerced or used deceptive tactics to obtain Ribera-Miranda's answers or initials on the bank documents. Nor was Ribera-Miranda interrogated in a police-dominated atmosphere as he was in a room in his store, chosen by him.

  Analyzing the totality of the circumstances of this case, Ribera-Miranda was not in custody during the agents' interrogation. Ribera-Miranda was not in custody until after the conclusion of the interview. Moreover, circumstances surrounding the interrogation would not make a reasonable person believe he was in custody. Ribera-Miranda's movement was not restricted and he waived his *Miranda* rights as evidenced by his initials next to each statement on the *Miranda* form. In addition, Ribera-Miranda signed the *Miranda* form with Agents Dostal and Buckley also signing as witnesses. Furthermore, there is no

evidence in the record to suggest Agents Dostal or Buckley coerced Ribera-Miranda into signing or initialing the *Miranda* form.

Assuming *arguendo*, Ribera-Miranda was in custody during the interrogation, Agents Dostal and Buckley would have been required to advise Ribera-Miranda of his *Miranda* rights and obtain a "knowing, voluntary, and intelligent" waiver prior to any interrogation. *United States v. Phillips*, 506 F.3d 685, 687 (8th Cir. 2007). "A waiver is knowing and intelligent if made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *United States v. Harper*, 466 F.3d 634, 643 (8th Cir. 2006). "A waiver is voluntary if it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *United States v. Gaddy*, 532 F.3d 783, 788 (8th Cir. 2008) (**citing** *Harper*, 466 F.3d at 643). Moreover, a defendants valid waiver of his *Miranda* rights generally amounts to a waiver of his Sixth Amendment right to counsel. *Montejo v. Louisiana*, No. 07-1529, 2009 U.S. WEST 1443049, at *1 (May 26, 2009); **see also** *Patterson v. Illinois*, 487 U.S. 285, 296 (1988) ("[A]n accused who is admonished with the warning prescribed by this Court in *Miranda* . . . has been sufficiently apprised of the nature of his Sixth Amendment rights.").

In this particular circumstance, Agent Buckley informed Ribera-Miranda of his *Miranda* rights before Agent Dostal continued the interrogation. Agent Dostal purposefully had Agent Buckley advise Ribera-Miranda of his *Miranda* rights. Agent Buckley then proceeded to read the *Miranda* form to Ribera-Miranda, in Spanish. Ribera-Miranda went through the *Miranda* form line by line with Agent Dostal. Moreover, Ribera-Miranda's attention to Agent Buckley's advisement was evidenced by Ribera-Miranda's correction of Agent Buckley's pronunciation and Ribera-Miranda's initials next to each statement on the *Miranda* form as well as his signature after the advisement. There is no evidence that Ribera-Miranda's initials or signature on the *Miranda* form were written due to coercion. For the reasons stated above, Ribera-Miranda's motion to suppress statements made during the interrogation by the Agent's on January 7, 2009, should be denied. Upon consideration,

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

Ribera-Miranda's motion to suppress (Filing No. 30) be denied.

## ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) business days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 1st day of June, 2009.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge